The next case is Evanston Insurance Company v. J&J Cable Construction. And Mr. Finch should be here for Evanston. And Mr. Caligas and Allred for the Applease. And when you're all there at table, Mr. Finch, you may begin. May it please the Court. I am Lane Finch. I'm here to represent Evanston Insurance Company, formerly known as Essex Insurance Company. We're here to discuss a much simpler matter than the Court has already been challenged with today. This case involves a total pollution exclusion, which is approximately three dozen words long. It also involves clear allegations in the underlying complaint. And I quote, the sewage line was breached. And thereafter, raw sewage began to and continued to seep and invade their home. The Alabama Supreme Court must have thought it's a simple, easy issue because they refused to answer the certified question because they obviously thought that the case is decided by, they'd already decided the issue and U.S. Fidelity and Guarantee versus Jewel Armstrong. Your Honor, I would disagree with that. That case involves a significantly different qualified pollution exclusion. Our case involves a total pollution exclusion, also known as an absolute pollution exclusion. There are numerous cases that we have cited. This court, in fact, has decided a case, the Maxine Furze case, under the same absolute pollution exclusion. And if I may, the Alabama Supreme Court in the Abstin Petroleum case applied a total pollution exclusion to gasoline seepage, and it did not refer back to the Armstrong case or bar the application of that exclusion because there was not the traditional environmental pollution. Also, one last point as to Armstrong, in reading that particular exclusion, it is limited to pollutants that are discharged into or upon land, the atmosphere, or any water course or body of water. And that is along your lines of traditional pollution, which none of that language is in any of the more modern. Tell me why I'm wrong. I think what they're referring to is industrial type pollutants. And raw sewage is not an industrial type pollution. So, therefore, the exclusion doesn't apply in the policy. Why am I wrong about that? Well, I would argue gasoline is not an industrial type pollution either. And gasoline, of course, has beneficial uses. Obviously, curry aroma is not an industrial type pollution. And there are the United States District Court for the Southern District of Alabama applied an identical pollution exclusion in the Estes Heating case and found that noxious gases emitted from drywall constituted pollution that was excluded under, again, an identical exclusion. We've cited cases from Michigan to Georgia to Florida finding raw sewage to be pollution as well as the odors from rendering plants. You can cite a case, you can cite an Alabama case that stands for the proposition that raw sewage is pollution? Yes, sir. And we have in our brief, we've cited cases going back not in the context of an absolute pollution exclusion or any pollution exclusion, but there are cases from 1903, 1911, 1943, and I think 2000. It says raw sewage is a pollutant? Yes, sir. And we've cited that in our brief. We also cited... What case is that? Well, that's all right. I don't want to take up all your time. But if you say it's in the brief, well, I'll take a look at the brief again. Yes, sir. It's in the brief. I'm just trying to find it in the index. We've cited that in our brief. We've also cited the Alabama Department of Environmental Management Administrative Code, which defines raw sewage to be pollution. We've also cited an ordinance from the city of Montgomery defining raw sewage to be pollution. Quite honestly, I can't imagine if raw sewage is not pollution, what else is? I think you make a good common sense argument. And if we didn't have Armstrong, I might be with you. But you've got significant problems, in my personal opinion, with Armstrong because Armstrong has a clause that whether you call it qualified or not is worded in almost exactly the same way, except for the part that says that the exclusion doesn't apply if the discharge is sudden and accidental. But Armstrong doesn't focus on the sudden and accidental portion of it. It just ignores it. And what it says, it's very short. It says, an identical clause is not free of ambiguity, should be strictly construed against the insurer. This clause is intended to cover, as Judge Wilson hinted at, only industrial pollution and contamination. And to deny coverage here would be to distort the plain purpose of the pollution exclusion. Right. You have the same, almost the exact same exclusion here. And you have the same, quote unquote, pollutant, raw sewage. Why isn't the right thing to do to just follow Armstrong and let the Alabama Supreme Court tell us in a later case that we got it wrong? Well, I would ask, why is not the right thing to do to follow the Alabama Supreme Court in Abston? It didn't involve raw sewage. Yes, sir. That's the problem. If you had Armstrong with a different pollutant, I could see the argument. Raw sewage is not like that pollutant. There are differences. Don't apply that case. That case is distinguishable. But you've got almost the exact same exclusion. And you've got the same, for lack of a better term, pollutant. And Armstrong says there's coverage. We do not have a definition of pollution in Armstrong. We do have a policy definition of pollution. But the definition of pollution in your policy is the substance of the clause in Armstrong. Your policy defines pollutant as any solid liquid, gaseous, or thermal irritant, or contaminant. In Armstrong, it's any smoke, vapor, soot, formal acids, alkali, toxics, chemical liquids, or gases, waste materials, or other irritants, contaminants, or pollutants. So whether you have a separate definition or not, the clause has what's included and what's not included. I just don't see how you get outside of Armstrong. Well, you get outside of Armstrong by laying the exclusions next to each other. And you will see that the more modern absolute pollution exclusion, which commentators have talked about the evolution of these, and many courts have talked about that as well. And in the current iteration of the total policy, excuse me, total pollution exclusion, it excludes coverage that would not have occurred in whole or in part, but for the discharge, et cetera, of pollutants at any time. And I would argue that at any time means this exclusion is, as its title says, a total pollution exclusion. And if I may, in the last two minutes, make a couple more points about Armstrong. That court was very careful to say three things. It said we should not be understood to hold raw sewage could never be such a pollutant. It also said we should not be understood to hold that the insurance company could not write an exclusion clause which would cover the activity involved here. And that's what the companies have done. They have modified the exclusions to indicate they are not tied to traditional types of industrial pollution. And then thirdly, the Armstrong case says- Of course, the insurance company could have amended its insurance contracts to include raw sewage as pollution after Armstrong, but it didn't do that. Yes, sir. And Judge Albritton addressed that, as did the Alabama Supreme Court in Abstin. And in fact, in Abstin, the Alabama Supreme Court rejected the insured's argument that, hey, gasoline is not included in the list. Therefore, it's not a pollutant. And the Alabama Supreme Court stated in response that drafters cannot anticipate all interactions of fact and text. And if they could, the effort would leave behind a contract more like a federal procurement manual than an insurance policy, and insureds would not be better off in the process. The resulting contract would only be incomprehensible and also more expensive. So yes, a company could look, and I looked yesterday. The EPA has a primary pollutant list. It has 126 pollutants on it. That's only the primary list. These insurance contracts in Alabama are, when the language is ambiguous, Alabama says we construe the language for the benefit of the insured and against the insurer. And exclusions are to be interpreted as narrowly as possible. So we're not, you're not interpreting this exclusion as narrowly as possible. Well, I mean, And it also says, Alabama law also says most strongly against the insurance company that drafted and issued the policy. Yes, sir. I agree that that is the law in Alabama. The law in Alabama is also that an insurance company can write its policy as narrow as it desires as long as that does not contradict a statute or public policy. And the Alabama Supreme Court has approved in a non-industrial context this language in Abstin. This Eleventh Circuit has also applied under Alabama law the same provision in a non-industrial context in Maxine Fers. And the Southern District Court has also applied this exact same clause in a non-industrial context with off-gassing from Chinese drywall. And again, there are many cases we've cited supporting that position. And it is a rare case limiting these days an absolute pollution exclusion to traditional environmental things. Thank you, Your Honor. You know, you, generally insurance companies prefer, I think this is a fair generalization, prefer to file deck actions in federal court when there's a coverage issue, even if they're being sued for something else or they're insured as being sued on the state law side. This might be a case where the next time this thing rolls around, you may want to file in state court, get the Alabama courts to figure this out and have the Alabama Court of Civil Appeals decide whether or not Armstrong is no longer good law because of the differences you mentioned. Well, that'll solve the issue once and for all. Your Honor, Alabama's courts have a, possibly a habit, I might suggest, of overruling things without saying they overrule things. And I suggest that's what happened in Abstin. That's a problem for us. Yes, sir. I understand that. But filing in federal court makes sense when we have a case from this circuit and a case from a district court within my state holding that this exact same clause excludes coverage for curry aroma, gasoline, and off-gassing. And we have raw sewage. And again, I can't imagine what possibly could be more of a pollutant than that. Thank you for your time. Thank you. Thank you. Mr. Coligus. May it please the court, Louis Coligus on behalf of Appellee Dixie Electric Cooperative. We're asking the court to affirm the district court's order on summary judgment that found this pollution exclusion not applicable in this context. Just to address a few points with regard to the question concerning could the insurance company change its exclusion, amend it so as to cover situations like this. I have three points on that. Yes, certainly they could. First thing they could do is stop calling it a pollution exclusion. If they're intending it to be as broad as they want it read to include all sorts of things, whether it be curry aroma or somebody, I use this as example, shakes up a can of Coca-Cola, it sprays, opens it, it sprays everywhere and stains clothing, that that is a pollutant. Or even water being a pollutant when it leaves a water stain on something. But they also, it includes within the term pollution waste, right? Why wouldn't waste be, why wouldn't raw sewage constitute waste? Well, that's a great question and a question that the court in Armstrong had the same definition. Notwithstanding the inclusion of the term waste, it still found that sewage was not applicable with regard to this type of situation under a pollution exclusion. Also, it mentions that it can be recycled and things of that nature as waste. Whereas here the, you don't recycle the, I hate to use the word feces in context, but that's what it is in this context. And with regard to, for example, I want to address. Well, the recycling inclusion within the definition of pollutants is in your policy here, not in the policy at Armstrong. Correct. But I don't think it applies here given what it is, sewage. I mean, I don't know that you recycle the sewage. You might. For fertilizer? Well, not for residential sewage coming from a residence. And again, that's the key here. And I think that's what distinguishes this from even Apston. Apston involved a gasoline leak at a station which required, that leaked into the soil, contaminated it, and required the business to be closed. It also required ADEM, Alabama Department of Environmental Management, intervention involved. So we had an industrial or a traditional environmental case there. Also, again, as you pointed out, it was gasoline and not sewage. Here we really had, what we have here is a toilet backing up in a house. The sewage involved in this case did not come from somewhere else. It did not come from a wastewater treatment plant down the street. It's their own sewage, the tenant's own sewage. It just never left the property. And that, and again, it goes to the point that was made that the two exclusions are significantly different. We would disagree wholeheartedly. When you really look at the provisions, they're actually more identical than they are the same. And with regard to the distinguishment of it being a qualified pollution exclusion versus a total or absolute, again, the qualified pollution exclusion, that name was only given after Armstrong. In fact, Armstrong described it as a standard pollution exclusion. So the court shouldn't get caught up in the names, especially given Porterfield, where Porterfield was interpreting an absolute pollution exclusion. Yet in addressing the terms like discharge and dispersal, it looked back to the court's prior construction in qualified pollution cases that had those same terms. So the fact that we're asking the court, just like the district court did, to look to Armstrong, the fact that it was a qualified pollution is not a distinguishing factor. It's just really looking at the terms here. He also mentioned that with regard to defining sewage as a pollutant, they cited to ADEM regulations. They also cited in their reply brief a City of Montgomery ordinance. That City of Montgomery ordinance applies to land disturbances and I can't remember, land like grading issues in the City of Montgomery. It has nothing to do with a toilet backing up in a house. And even still, if it's reasonable for an insured or the insurance company or both to look to ADEM regulations when construing the terms of this exclusion, that necessarily would mean that it would only apply in context where ADEM was applicable. Here, ADEM is not going to come out to my house to address my toilet backing up. Do you think you'd be in a little more trouble if Armstrong didn't exist? Correct. Yes. I think if this was a first instance, for example, the Maxine Furze case, I realize it's an unreported decision of this court and looking at an issue of first impression without Armstrong and I think that goes to the, what a reasonable insured would view the policy as. You've got to consider as the court in Porterfield instructed, as the court in Alabama Plating instructed, that judicial construction placed on particular words and phrases made in the prior to the issuance of the policy, employing them will be presumed to have been the construction intended to be adopted by the parties. And so here you have to look at Armstrong. If Armstrong wasn't there, yes, we'd have a much different argument, if an argument at all. It'd be a much different case. But again, you can't ignore Armstrong. I think that's the key here is we're talking about Alabama law. There can be cases throughout this nation that go one way or the other. Porterfield acknowledged that. Porterfield said you can find support or an argument against any issue that's come up in these pollution exclusion cases. They're all over the map. For example, we cited the Minerva case from Arkansas, which actually did look to Alabama law. And in Minerva, it found it's not clear from the language of the policy that a single backup of a septic tank in a mobile home park is necessarily the kind of damage the clause was intended to exclude. And it said the argument that the intent was to address industrial polluters was plausible. There, it's the same situation. In one of the underlying cases, Ms. Torrance, for example, she alleged she had one backup. One backup and that's it. And so same thing here. The only difference, there was only a minor difference in that Minerva case. I thought I thought Mr. Mr. Finch said that he cites a case in his brief, an Alabama case, where a court interpreted an insurance policy to say that raw sewage constitutes pollution. Are you aware of that case? There's that case does not exist. It's not it was not in the kind I think he was going to correct. It was not in the context. We'll get to come back up. If I misquoted you, if I misquoted you, you'll get to come back up. It's not an insurance policy. It's not an insurance policy? It's not. They cite cases that involve nuisance and it's on page 30 of their brief. I'll go ahead and they cite cases of talking about nuisance and criminal conduct. Of course, those cases are unavailable because none of them involved an interpretation of insurance policy or the definition of pollutants in a pollution exclusion. Those were just offhand references to pollution in a nuisance case. But again, if we're looking to traditional forms of pollution in a sense of if this was sewage that had leaked into the ground and contaminated entire neighborhood and inquired ADEM and the EPA and everyone else, whoever else to come in and they're pulling, they're excavating dirt and all that. We may have a different case, I think. But here we have a toilet backing up inside a house. Yeah, I'm not sure you want to make that argument. But I mean, we have a toilet backing up inside of a house. It's the sewage was there. It never left the property. So you're saying raw sewage could constitute pollution if it was more extensive? Possibly. And that's where I think the argument with respect to Armstrong's qualification at the end were not to be understood that sewage could never be a pollutant or an insurance company could not draft an exclusion to cover this. In other words, given the circumstances and I think the court is limited here to the actual facts in the case. I know that there's a references to the complaint allegations, but I believe we cited the appropriate case law from Alabama stating when there's not necessarily coverage, you can look beyond the complaint to the admissible evidence and we've submitted that admissible evidence in the form of depositions from the underlying plaintiffs in the case as to how this sewage came back up into their house and they were harmed. So unless there's any more questions, I'll just go ahead and sit down and turn it over to Mr. Allred. Thank you. All right. Thank you, Mr. Gallegos. We'll hear from Mr. Allred. Good morning and may it please the court. It's true. What brings us here today is a backed up toilet and this is not an industrial pollution case like Ediston tries to make it into. The backed up toilet occurred in a house. It occurred because my folks fractured a sewage line out near the street while they were doing underground boring to install conduit so that Dixie Electric could put in an electric line. The case, the underlying Alabama court case, damage suit, does not allege that sewage escaped from the fracture out by the street. What the allegation is is that the fracture caused the flow of material through the sewage line to cease and it eventually backed up in the toilet. That's what the case is about. That's not an industrial pollution type case and it's not the type event that insurance companies or courts have looked at to exclude coverage. Now, Armstrong controls the case. No doubt about it. And I'm not going to talk about that except peripherally, but I want to talk about the reasonable expectation of the insured because that's my guy. All they did, their business, was underground boring, horizontal boring. They wanted liability coverage so if they strike an object while they're doing underground boring, they've got liability coverage. So, you know, the Alabama law which controls this issue says that it's not what the insurance company, it's not what Evanston intended the words to mean, but what a reasonably prudent person applying for insurance understood those words to mean. So, if you think about that, it could a reasonably prudent person looking at that policy tell that, well, let's see, if I'm doing underground boring, I've got liability coverage, but now if I strike a water line, I guess I've got coverage. If I strike a gas line, I guess I've got coverage. But if I strike a sewage line, that's an industrial pollutant and therefore I wouldn't have any coverage. He wouldn't know that. So let's take that reasonable expectation inquiry one step further. Let's say this didn't happen, but let's just say that my client had come to me and he says, David, I'm about to buy an insurance policy. I want you to look at this policy. Tell me if I have coverage if I strike something while I'm doing my underground boring. Well, I'd look at the law and I'd find Armstrong and I see what Armstrong says. So that doesn't avoid coverage for striking a sewage line. And then I would also find Porterfield and that doesn't avoid coverage for this particular circumstance. So I wouldn't say that there's any impediment to buying that policy with that particular endorsement in it. Another thing I want to point out to you is if you look at Porterfield because Justice Harwood who wrote that opinion on the Alabama Supreme Court went back and did an exhaustive history on pollution exclusion cases. He started with a Moulton, Allen and Williams case and went through Armstrong in five cases. Every one of them involved industrial pollution. Every one of them involved industrial pollution. So this circumstance here where Evanston is trying to apply this pollution, total pollution exclusion to a backed up toilet is a classic square pig in a round hole. It just does not fit. Absolutely doesn't. Looking at the Alabama law, Armstrong controls and if you ask, well, how could they write? How could Evanston write on exclusion that would exclude sewage? Well, they could number one say that. We're not saying you got to catalog everything, but one thing they could do is stop using environmental terms of art like dispersion, discharge. Those are, according to the Alabama Supreme Court, associated with environmental law and hazardous waste. That would be a way to do it. So in closing, the court has it right. This court doesn't sit in review of the Alabama Supreme Court. Instead, in a diversity case such as this, you apply Alabama law. And looking at the Alabama law, Armstrong controls, the trial court got it right and the exclusion does not apply. Thank you. All right. Thank you, counsel. Hear again from Mr. Fitch. Yes, Your Honor. Thank you. Sorry for my inability to find in my index, but we've cited those cases that I referred to primarily around page 21. Those cases don't involve interpretations of exclusions and insurance policies, right? No, sir. What I was attempting to do is illustrate the fact that it appears everyone knows that raw sewage is a pollutant. The Alabama courts do in a number of contexts. The Department of Environmental Management knows. The City of Montgomery knows. Courts across the nation know. I just have a hard time. So it's not ambiguous? The term unambiguous? No, sir. It is not ambiguous because, because the, Is there a difference between waste and hazardous waste? I would say probably not. One is more descriptive than the other. And there's a more recent case that was decided after the briefing was done here. It's a case out of the Eastern District of Washington where an industrial farm was spreading manure out on a field because they have to do something with it. And that manure then leached into the groundwater and the the insured said, well, that's not pollution. It's just manure. And the court there said the definition of pollution includes waste. And the court was not going to allow quibbling over the term waste. And it noted the dictionary definition, which is refuse from places of human or animal habitation, such as garbage, rubbish, excrement, and sewage. That's not an Alabama case, right? No, sir. No, sir. But I'm merely pointing out, and I'll get to Mr. Collegas' illustration with this case. The court in that case pointed out that it's the fact that the manure leached into the water system that created the contaminant. Had it been water in the water system, there's no contaminant. So his example about if we spill some water on the floor, is that a pollutant? I think that's quite honestly. So what's what jurisdiction is that case out of? State of Washington, Your Honor. It's a U.S. District Court. Sewage could be a pollutant in the state of Washington, but not in the state of Alabama. Yes, sir. But I believe we've illustrated that it is in the state of Alabama in many contexts, and the Supreme Court even said it could be considered raw sewage in the context of coverage. It just didn't find that under that different terminology. Let me ask you one more question. If you think that Armstrong isn't directly controlling, let me ask you this interpretation question. In Armstrong, waste materials was a category in and of itself. It wasn't an example. Here, waste is an example of a thermal irritant or contaminant. Doesn't that mean that waste materials was broader in Armstrong than it is here? I would disagree grammatically, Your Honor. Okay. What the exclusion now says is pollution is any solid, liquid, gaseous, or thermal. So they're trying to cover all of the states of matter, right? But it has to be an irritant or contaminant, right? Agreed. Okay. Including waste. Yes, sir. So waste is an example of an irritant or contaminant. Yes, sir. And in Armstrong, waste was its own category. It didn't have to be an irritant or contaminant because that clause says, let me see if I can get it all in one breath. Smoke, vapor, suits, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste materials, or other irritants, contaminants, or pollutants. You don't think that's broader than the one you have in your case? No, sir. Because ours says any damage which would not have been caused in whole or in part by, in essence, any contaminant or irritant. Any. At any time. So I don't see how that is narrower than the language in Armstrong. Okay. A few more points, if I may, just to respond to what was brought up. Also, with respect to waste, in that Washington case, they were quibbling over, well, what about manure? Is that waste? And the court said, waste is waste. Doesn't matter if it's animal waste. It's waste. And I would say, with all due respect here, it doesn't matter if it was human waste. It's waste. Also, they try to downplay and make it sound like maybe a little water, you know, came out onto the bathroom floor. They've cited the record. We've cited the record. One of the plaintiffs described it as if a port-a-potty was discharged in her house. So this is a pretty big event according to the plaintiff's testimony. And in fact, you know. If the policy doesn't cover this, I'm not sure that J&J needs an insurance policy. This is exactly, this is exactly the type of incident that they purchased the policy to ensure. No, sir. I would respectfully disagree. Two points. One, that's not in the record. There are statements by counsel as to what his client intended or wanted. That's not in the record. Also, this is a general liability policy. It covers a panoply of risks, including, as a boring company, if they are boring under and they hit a power line, and it explodes, transformer blows up, you know, pole falls on a car, falls on a person, all that's covered because that doesn't involve a pollutant. Again, the policy covers a number of risks and then it claws back with exclusions, certain things that the carrier does not intend to cover, and getting back to their point about, well, they could have written it differently in light of Armstrong. Why should they write it any differently in light of Chalamar, which is a 1997 decision applying a similar exclusion to clothing contaminated with lead paint? Again, not an industrial context. That's a federal district court case under Alabama law. The Abstin case we've discussed, Maxine Furze and Estes Heating, all of those cases say, you know, this should work. And also with respect to Porterfield, what the court had trouble with in Porterfield is the use of the words dispersal and discharge and similar words in the context of flaking lead paint. That's what the court was hung up on there. Not is lead a pollutant in some contexts. And some courts have looked at that. What's the context? Because in one context, something is not a pollutant. In another, it is. In our case, in this context, raw sewage is clearly a pollutant. And we believe the exclusion is, as it says, a total pollution exclusion. And this contaminant or irritant was excluded. And I appreciate you indulging me. I went over my time. Thank you. All right. Thank you, counsel. Court is in recess until 2.30 this afternoon.